**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KEITH PERRY,<br>        Plaintiff,<br><br>        v.<br><br>COREY KOZUCH and OFFICER<br>LUNDBERG,<br>        Defendants. | No. 14-cv-1026 (VAB) |

<u>**ORDER ON MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff, Keith Perry, brings this action against Defendants, Officer Corey Kozuch and Officer Lundberg[1], raising claims under the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1988 ("Section 1988"), the Constitution of the State of Connecticut, and the laws of Connecticut. Plaintiff initially brought this action in the Superior Court of Connecticut, and Defendants removed the action to this Court.  ECF No. 1.

Pending before the Court is the Defendants' motion for summary judgment on all of Mr. Perry's claims.  ECF No. 61.  For the reasons that follow, the Defendants' motion is **GRANTED** as to all of Mr. Perry's federal claims.  The Court declines to exercise supplemental jurisdiction as to Mr. Perry's remaining state law claims and therefore remands those claims to the Superior Court of Connecticut.

---

[1] Neither party has provided a full name for Officer Lundberg.

## I.    STATEMENT OF FACTS

As an initial matter, the Court notes that every fact outlined in the Defendants' Local Rule 56(a)(1) statement relies, at least in part, on a citation to Mr. Perry's own deposition testimony. *See generally* Def.'s Rule 56 Statement, ECF No. 61-2.  While Mr. Perry disputes various facts outlined in the Defendants' Rule 56 statement, his denials generally refer only to facts that do not contradict the facts in each corresponding paragraph of the Defendants' Rule 56 statement. *See generally* Pl.'s Rule 56 Statement, ECF No. 66.  As Defendants note, certain denials in Mr. Perry's Rule 56 statement appear to contradict his own deposition testimony. Def.'s Reply at 1, ECF No. 70.

On or around September 1, 2012, Mr. Perry purchased a 1985 Chevy C10 in South Carolina.  Def.'s Rule 56 Statement ¶ 1, ECF No. 61-2.  He obtained a temporary South Carolina registration for the vehicle and received one temporary paper license plate, which he installed on the rear of the vehicle. *Id.* ¶ 2.

On or around September 12, 2012, Mr. Perry was at a friend's house, located on Walnut Street in Middletown, Connecticut.  Def.'s Rule 56 Statement ¶ 3.  While Mr. Perry was at this friend's house, Mr. Perry's son called Mr. Perry and informed Mr. Perry that he had run out of gas and was at a Walgreens in Middletown. *Id.* ¶ 4.  At this time, Mr. Perry's vehicle had only one marker tag, which was on the rear of the vehicle. *Id.* ¶ 6.  The parties dispute whether the marker tag on the vehicle's rear was faded and illegible, but Mr. Perry's own deposition testimony states that he knew it was not legible and not clear.[2] *Id.* ¶ 7; Pl.'s Rule 56 Statement ¶ 7; Perry Dep. 101:10-21, 151:21-152:1, ECF No. 61-3.

---

[2] Following the oral argument regarding this motion, which was held on February 27, 2017, ECF No. 72, Mr. Perry filed a motion requesting a hearing, indicating that he believed the Court had read page 137 of Mr. Perry's deposition testimony into the record and indicated that it contained Mr. Perry's admission that his license place was illegible when such testimony was not actually contained on page 137.  ECF No. 73.

A.      **The Initial Stop**

While Mr. Perry was driving the vehicle, Middletown Police Officer Corey Kozuch

stopped Mr. Perry and approached Mr. Perry's driver's side window, at which point Mr. Perry

asked Officer Kozuch why he had been pulled over.  Def.'s Rule 56 Statement ¶ 8.  This stop

occurred near the intersection of High Street and Williams Street, on High Street.  *Id.* ¶ 5; Pl.'s

Rule 56 Statement ¶ 7; Perry Dep. 99:16-18, ECF No. 61-3. Officer Kozuch, who was

accompanied by Officer Lundberg while on patrol in a police vehicle, first noticed Mr. Perry's

vehicle when it drove past the intersection of Pleasant Street, Broad Street, and South Main

Street.  Police Report at 2, Pl.'s Br. Ex. 6, ECF No. 66-6.  Before stopping Mr. Perry, Officer

Kozuch had noticed that his vehicle did not have a front marker license plate, and he also noted

that the vehicle's rear marker license plate was "unreadable."  Police Report at 1-2.

Based on Mr. Perry's deposition testimony, Officer Kozuch's first statement to Mr. Perry

was that "did [you] know when [your] license plate was expired."  Perry Dep. 103:13-15, Pl.'s

Br. Ex. 1, ECF No. 66-1.  At some point during the encounter, Officer Kozuch also informed Mr.

Perry that "[w]e stopped you because we could not read the plate on your vehicle."  Perry Dep.

101:10-14, ECF No. 61-3.

Officer Kozuch asked Mr. Perry for his license and registration.  Def.'s Rule 56

Statement ¶ 10.  While Officer Kozuch was requesting Mr. Perry's license and registration, Mr.

---

Defendants responded that the portions of Mr. Perry's deposition testimony where he admitted that his
license plate was illegible were on pages 101 and 151-52 of his deposition testimony.  ECF No. 74.  The
Court held a telephonic status conference on March 16, 2017, ECF No. 77, to discuss Mr. Perry's motion
and found that Mr. Perry's deposition testimony did, in fact, contain admissions that he knew his license
plate was illegible.  *See* Perry Dep 101:10-21 ("Q: All right. And in fact, you already knew at that point it
[the license plate] was not legible, correct? A: Yes. Q: So you know there was an issue with - - A: Yes, Q:
- - it being very clear? A: Yes."), 151:21-152:1 ("Q: You got to focus on my question. It only had a plate
on the rear, correct? A: Correct. Q: And you already agreed that the plate was illegible, it was faded? A:
Correct."), ECF No. 61-3.

Perry was annoyed and informed Officer Kozuch that he was upset about being stopped.  Perry Dep. 102:23-103:4, 105:22-106:8, 107:22-108:20, ECF No. 61-3.

After Officer Kozuch received Mr. Perry's license and registration, Officer Kozuch walked away from Mr. Perry's vehicle.  Def.'s Rule 56 Statement ¶ 11.  At this time, Mr. Perry removed his cell phone from a cell phone clip attached to his hip, called his friend, and then placed his cell phone on the seat, using Bluetooth to continue to speak with his friend.  *Id.* ¶¶ 11-12; Perry Dep 113:16-21, ECF No. 61-3.  After a period of three to five minutes, Officer Kozuch and Officer Lundberg both walked to Mr. Perry's passenger side window, returned his information, and informed Mr. Perry that he could go.  Def.'s Rule 56 Statement ¶ 13.

### B.   Officers Ask Mr. Perry to Exit the Vehicle

After Officers Kozuch and Lundberg informed Mr. Perry that he could go, Mr. Perry asked them whether he should "go to headquarters" so that he would not "keep getting pulled over" while driving the vehicle.  Perry Dep. 126:18-22, ECF No. 61-3.  Mr. Perry testifies that, at this time, his voice may have ben raised because he was feeling agitated.  *Id.* 127:3-11.  Mr. Perry could not recall whether he asked the officers this question once or twice.  *Id.* 127:12-25.

Officer Kozuch allegedly responded to Mr. Perry's question by telling Mr. Perry to "move the F on."  Perry Dep. 128:10-15, ECF No. 61-3.  Mr. Perry testifies that he then "got upset" and began "yelling."  *Id.* 128:19-23.  Specifically, Mr. Perry yelled: "[w]hy – why are you cussing and swearing at me? What makes you think you have the right to cuss? I didn't swear at you. Why are you cussing and swearing at me?" and "I go to church. I don't be around people cussing and swearing."  *Id.* 128:25-129:5.  Officer Kozuch responded by telling Mr. Perry that he "don't give a F about God."  *Id.* 129:10-12.  One of the officers then told the other to "write [Mr. Perry] a ticket."  *Id.* 129:7-8.  At this time, one of the officers also told Mr. Perry to "[g]et out of

4

the car." *Id.* 130:1-4, 131:1-4.  Mr Perry asked the officers why he had to get out of the vehicle. *Id.* 132:19-133:5.

Mr. Perry testifies that, after one of the officers told him to get out of the car, Officer Kozuch then went around the back of the vehicle to go to the driver's side of the vehicle to open the door.  Perry Dep: 131:10-17, ECF No. 61-3.  At this time, Mr. Perry was still on the phone with his friend using Bluetooth, though he was not saying anything to her.  *Id.* 131:22-132:3. When Officer Kozuch reached the driver's side door of the vehicle, he and Mr. Perry both moved to open the door at the same time.  *Id.* 132:4-7.  Throughout this encounter, Officer Lundberg remained standing at the passenger side of Mr. Perry's vehicle, towards the back of Mr. Perry's truck, near the back tires.  *Id.* 148:9-25, 149:3-9.  Mr. Perry also partially exited the vehicle at the time and had "one foot on the ground" and "the other foot was in the truck."  Perry Dep 132:15-18, ECF No. 61-3.  Around this time, Mr. Perry also asked the officers, "[w]hy, why are you writing me a ticket at this point, you already gave me my stuff back."  *Id.* 132:10-12.

### C.     Officer Kozuch Pats Down Mr. Perry

At the time that Mr. Perry was partially exited from the vehicle, with one foot on the ground and the other in the truck, Officer Kozuch grabbed Mr. Perry's left wrist with both hands. Perry Dep 134:11-18, ECF No. 61-3.  Officer Kozuch gripped Mr. Perry's left wrist firmly.  *Id.* 135:2-5.  Mr. Perry states that at some point during the encounter, Officer Kozuch pulled at his wrist once.  *Id.* 138:4-12.

Mr. Perry remained still at this time and told Officer Kozuch: "I've been out of work for 12 years, I had a bad shoulder, I need a shoulder replacement. I think it's best if you let my shoulder go, my arm go."  Perry Dep. 135:10-13, ECF No. 61-3.  Mr. Perry testifies that his tone of voice was upset and that he was yelling at this time.  *Id.* 135:14-21.  Officer Kozuch then

5

yelled at Mr. Perry in response, raising his voice to a tone that Mr. Perry testifies was "like, screaming and yelling." Perry Dep. 138:19-22, ECF No. 61-3. Officer Kozuch yelled at Mr. Perry to get to the back of the truck. *Id.* 138:16-17.

Mr. Perry testifies that he responded by asking Officer Kozuch, "Why you yelling at me? You need anger management." Perry Dep. 138:23-139:1, ECF No. 61-3. Officer Kozuch responded by telling Mr. Perry to put his hands in the back of the tailgate on the vehicle, which Mr. Perry did. *Id.* 139:2-6. Officer Kozuch asked Mr.Perry whether he had any permit for a gun, and Mr. Perry responded that he did not. *Id.* 139:6-7. Around this time, Officer Kozuch informed Mr. Perry that "there was a bulge." *Id.* 140:12-15. Mr. Perry disputes whether there was a bulge, though he admitted that he still had his phone case on his belt at this time. *Id.* 140:16-18, 141:3-22. Mr. Perry also admits that he could not see from Officer Kozuch's perspective, or "from his angle looking down." *Id.* 141:23-142:1. Mr. Perry also testifies that he had looked down at the phone case on his belt when Officer Kozuch had asked about whether he had a permit for a gun. *Id.* 142:2-12. When Mr. Perry looked down towards the phone case on his belt, at his hip, it was visible to him. *Id.* 142:11-12. At no point did Mr. Perry inform Officer Kozuch that the item on his belt was his phone case. *Id.* 144:1-9.

Officer Kozuch then informed Mr. Perry that he would conduct a pat down. Perry Dep. 139:10-21, ECF No. 61-3. Officer Kozuch then conducted the pat down. *Id.* 144:1-2. Mr. Perry testifies that Officer Kozuch patted down Mr. Perry's shoulders, arms, sides, belt, legs, and ankles. *Id.* 144:3-6. Neither Officer Kozuch nor Mr. Perry spoke during the pat down. *Id.* 144:7-13.

### D.      Officer Kozuch Removes Mr. Perry's Headset

After Officer Kozuch completed the pat down of Mr. Perry, Mr. Perry spoke to his friend

over the headset, asking "Ross, did you hear that?"  Perry Dep. 146:10-18, ECF No. 61-3.

Around this time, Officer Kozuch attempted to grab the Bluetooth out of Mr. Perry's ear, but Mr.

Perry prevented Officer Kozuch from doing so, by moving his head away.  *Id.* 146:20-147:2.

Officer Kozuch then informed Mr. Perry that "if you move again, you'll be arrested for

resisting."  *Id.* 147:2-4.  Officer Kozuch then grabbed the Bluetooth headset and removed it from

Mr. Perry's ear.  *Id.* 147:5-7.  Officer Kozuch then threw the headset into Mr. Perry's vehicle,

through the driver's side window, in to the front area of the truck.  *Id.* 147:8-16.

### E.      After the Pat Down

After Officer Kozuch completed the pat down of Mr. Perry, Officer Kozuch moved to the

side of the back of the vehicle, towards the passenger side of the vehicle, to speak to Officer

Lundberg.  Perry Dep. 144:16-19, ECF No. 61-3.  Officer Kozuch then spoke to Mr. Perry again,

first saying "[l]et me ask you a question," to which Mr. Perry answered, "[o]kay."  *Id.* 144:19-21.

Officer Kozuch then asked Mr. Perry whether he "felt offended because I cuss[ed] and swore at

[him]."  *Id.* 144:22-23. Mr, Perry answered yes.  *Id.* 144:24.  Officer Kozuch then replied, "Well,

then you're weak."  *Id.* 144:25.  Mr. Perry had no response.  *Id.* 145:1-2.

Officer Kozuch then went to the officers' patrol vehicle to write the ticket.  Perry Dep.

145:3-6, ECF No. 61-3.  By this time, Mr. Perry was also standing near the back of the truck,

near where Officer Lundberg was standing.  *Id.* 145:7-16.  Officer Lundberg spoke to Mr. Perry,

"trying to explain" that "some cops talk like that."  *Id.* 145:17-20.

Officer Kozuch then returned to where Mr. Perry was and gave Mr. Perry the ticket.

Perry Dep. 150:1-2, ECF No. 61-3.  Mr. Perry did not say anything further to Officer Kozuch at

this time.  Id. 150:3-4.  Officer Kozuch spoke to Mr. Perry at this time to explain what Mr. Perry

should do after receiving the ticket.  *Id.* 150:5-8.  Mr. Perry then asked for Officer Kozuch's

name and badge number, and Officer Kozuch replied that this information was already on the

ticket.  *Id.* 150:9-12.  The ticket indicated that Officer Kozuch had issued it for Mr. Perry's

failure to display a front license plate and failure to use a turn signal.  *Id.* 152:16-19; Ticket,

Def.'s Rule 56 Statement Ex. C, ECF No. 61-6.

Mr. Perry testified that, throughout this encounter with Officer Kozuch and Officer

Lundberg, Officer Lundberg never touched or struck Mr. Perry.  Perry Dep. 152:2-6, ECF No.

61-3.  Indeed, when Officer Kozuch made physical contact with Mr. Perry by pulling on Mr.

Perry's arm, Officer Lundberg had been on the opposite side of Mr. Perry's vehicle.  *Id.* 152:6-

10.  Mr. Perry also testified that Officer Kozuch's only form of physical contact with him was

when Officer Kozuch pulled on his arm once while Mr. Perry was partially exited from the

vehicle.  *Id.* 150:21-24.  Mr. Perry testifies that Officer Kozuch never punched him, kicked him,

kneed him, struck him in any manner, Tased him, use the baton on him, used pepper spray on

him, or had any other kind of physical contact with him besides pulling on his arm.  *Id.* 151: 2-

17.  According to Mr. Perry, neither of the officers ever made any derogatory comments about

his race.  *Id.* 152:11-15.  Mr. Perry also admitted that he only had a rear license plate and that it

was illegible and faded.  *Id.* 151:21-152:1.

During the interaction with Officer Kozuch, the plastic earpiece of Mr. Perry's Bluetooth

headpiece broke off, so that he could no longer put it on his ear.  Perry Dep. 154:15-22, ECF No.

61-3.  Mr. Perry has testified that he sustained no physical injury as a result of his encounter with

Officer Kozuch.  Perry Second Dep. 6:1-7, ECF No. 61-4.  Mr. Perry testifies that he did,

however, receive some psychiatric treatment in relation to the events in this case.  *Id.* 6:9-25.

## II.    STANDARD OF REVIEW

The Court will grant a motion for summary judgment if it determines that there is no

genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  The moving party bears the burden of showing that no genuine dispute of

material fact exists.  *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000).  "A

dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Williams v. Utica Coll. Of Syracuse Univ.*, 453 F.3d

112, 116 (2d Cir. 2006) (quoting *Stuart v. Am. Cyanamic Co.*, 158 F.3d 622, 626 (2d Cir. 1998).

The substantive law governing the case identifies which facts are material, and "only disputes

over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment."  *Boubolis v. Transp. Workers Union of Am.*, 442 F.3d

55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On summary judgment, the court's task is "carefully limited to discerning whether there

are any genuine issues of material fact to be tried, not to deciding them."  *Gallo v. Prudential*

*Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  When reviewing the record

on a motion for summary judgment, the Court must "assess the record in the light most favorable

to the non-movant" and "draw all reasonable inferences in its favor."  *Weinstock v. Columbia*

*Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

Furthermore, the Second Circuit has "repeatedly expressed the need for caution about

granting summary judgment to an employer in a discrimination case, where . . . the merits turn

on a dispute as to the employer's intent" because direct evidence of discriminatory intent is only

rarely available and the record must be "scrutinized for circumstantial proof that, if believed,

would show discrimination."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting

*Gallo*, 22 F.3d at 1224).  Inferences drawn in favor of the nonmovant must, however, be supported by evidence, and the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment.  *Liberty Lobby*, 477 U.S. at 252.  Conclusory allegations, conjecture, and speculation are insufficient to create genuine issues of material fact.  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (internal quotation marks omitted).

## III.    DISCUSSION

The Complaint does not separate Mr. Perry's claims into multiple counts.  Mr. Perry brings claims against the Defendants under the Fourth and Fourteenth Amendments of the United States Constitution, Section 1983, Section 1988, the Constitution of the State of Connecticut, and the laws of Connecticut.  Compl. ¶ 3.  Defendants move for summary judgment on the Complaint in its entirety.  ECF No. 61.

### A.    Section 1983 Claims

Mr. Perry brings various claims under the Constitution of the United States, through Section 1983 and Section 1988.  Compl. ¶ 3.  Specifically, he brings his federal constitutional claims under the Fourth Amendment and the Fourteenth Amendment.  *Id.*

#### 1.    Fourteenth Amendment Claims

The Complaint does not explain the nature of Mr. Perry's Fourteenth Amendment claim, Compl. ¶ 3, though it makes general allegations that the Defendants "detained, seized, arrested, and caused plaintiff to be prosecuted" and "filed false charges" against Mr. Perry.  *Id.* ¶ 19.  The Court construes Mr. Perry's Complaint as bringing claims alleging the denial of both procedural and substantive due process under the Fourteenth Amendment.

The Fourteenth Amendment provides, in relevant part, that no person shall be deprived of "life, liberty, or property" "without due process of law."  U.S. Const. Amend. XIV § 1.  Mr. Perry's complaint does not specify whether he brings a procedural due process claim or a substantive due process claim under the Fourteenth Amendment.  As discussed below, summary judgment for Defendants would be appropriate regardless of whether Mr. Perry brings a procedural or substantive due process claim.  Because all of the facts underlying Mr. Perry's claims are related to what he believes to be false arrest and false imprisonment, they do not, as a matter of law, sustain claims under the Fourteenth Amendment due process clause.

All of Mr. Perry's claims arise from one encounter where he was stopped by Defendants, resulting in (a) a heated discussion with Officer Kozuch, (b) Officer Kozuch grabbing onto his arm, (c) Officer Kozuch taking his Bluetooth headset from his ear, (d) Officer Kozuch breaking the Bluetooth headset after throwing it into Mr. Perry's vehicle, and (e) Officer Kozuch giving Mr. Perry a ticket.  This encounter gives rise to Mr. Perry's Fourth Amendment claims for false arrest and false imprisonment.  Compl. ¶¶ 3, 26.  Because the Fourth Amendment provides explicit protection "against unreasonable searches and seizures," U.S. Const. Amend. IV, Mr. Perry cannot also bring Fourteenth Amendment claims relating to the same course of Defendants' conduct.  *See Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) ("Where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.") (internal quotation marks omitted).

As a matter of law, Mr. Perry cannot bring a Fourteenth Amendment procedural due process claim based on facts that could support a Fourth Amendment false arrest or false imprisonment claim.  *See Levantino v. Skala*, 56 F. Supp. 3d 191, 203 (E.D.N.Y. 2014)

("However, the Plaintiff's procedural due process claim cannot be predicated upon the same factual basis as his Fourth Amendment false arrest and false imprisonment claims."); *Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 474 n. 9 (S.D.N.Y. 2009) ("The Court briefly notes that Plaintiff's allegations of false arrest and malicious prosecution state a claim only under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment . . . . Nor can Plaintiff state a claim for the violation of his procedural due process rights.").

Mr. Perry also cannot bring a substantive due process claim under the Fourteenth Amendment regarding facts that also give rise to his Fourth Amendment claims for false arrest and false imprisonment.  *See Bryant v. City of N.Y.*, 404 F.3d 128, 136 (2d Cir. 2005) ("Substantive due process analysis is inappropriate where a claim is covered by the Fourth Amendment.") (internal quotation marks omitted); *see also Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("[W]e have held that where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."); *Mayer v. City of New Rochelle*, No. 01-CIV-4443 (MBM), 2003 WL 21222515, at *8 (S.D.N.Y. May 27, 2003) ("A § 1983 claim of criminal prosecution without probable cause may not be based upon denial of due process rights, but only upon denial of Fourth Amendment rights.") (citing *Albright v. Oliver*, 510 U.S. 266 (1994)).

### 2.    Fourth Amendment Claims

Mr. Perry's Section 1983 claims also include claims under the Fourth Amendment, Compl. ¶ 3, alleging that Defendants "detained, seized, arrested, and caused plaintiff to be prosecuted."  *Id.* ¶ 26.  The Court construes Mr. Perry's Complaint as raising Fourth Amendment claims for false arrest, excessive force, and malicious prosecution.

When analyzing Section 1983 claims alleging false arrest, the Second Circuit "generally look[s] to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). "Under Connecticut law, false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (citing *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)) (internal quotation marks omitted). Under Connecticut law, the plaintiff has the burden of proving an unlawful arrest when bringing a false arrest claim and "a false arrest claim cannot lie when the challenged arrest was supported by probable cause." *Id.* at 203 (citing *Beinhorn v. Saraceno*, 23 Conn. App. 487, 491 (1990)).

Indeed, "[i]t is well-established that probable cause is a complete defense to claims of false imprisonment and false arrest." *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks omitted)). An absence of probable cause is also an essential element for a malicious prosecution claim. See *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 306 (D. Conn. 2002) ("Under Connecticut state law, to establish malicious prosecution, the plaintiff must demonstrate . . . that the defendant acted without probable cause." (citing *Clark v. Town of Greenwich*, No. CV00177986, 2002 WL 237854, at *3 (Conn. Super. Jan. 24, 2002))); *see also Jovanovic v. City of N.Y.*, 486 Fed.Appx. 149, 152 (2d Cir. 2012) (summary order) ("An element of any malicious prosecution claim is the absence of probable cause."). Thus, if the Defendants had probable cause for arresting Mr. Perry, then no reasonable jury could find for Mr. Perry on his Fourth Amendment false arrest and malicious prosecution claims.

Additionally, even if a reasonable jury could find that Defendants had violated Mr. Perry's Fourth Amendment rights, Defendants may still be entitled to summary judgment on qualified immunity grounds. *See generally Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013) (affirming district court's summary judgment ruling that though defendants arrested plaintiff without probable cause and conducted unreasonable search they were nevertheless entitled to summary judgment on qualified immunity grounds). "Qualified immunity protects . . . state officials from money damages and 'unnecessary and burdensome discovery or trial proceedings.'" *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (internal quotation marks omitted)). It "is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment." *Coollick*, 699 F.3d at 219. The Defendants raise qualified immunity as a defense. *See* Def.'s Br. at 4-6, 10-11, 16-21.

When a court analyzes the question of whether public officials are entitled to qualified immunity, there are two questions that guide the inquiry. *See Zalaski v. City of Hartford*, 723 F.3d 382, 388-89 (2d Cir. 2013). First, the court considers whether "the facts show that the officer's conduct violated plaintiff's constitutional rights." *Id.* Second, if the answer is no, "further inquiry is unnecessary because where there is no viable constitutional claim," but if the answer is yes, "or at least not definitively no," the court may move on to the second question "was the right clearly established at the time of defendant's actions?" *Id.* Courts need not consider these two questions in order, and may consider the latter question first, which may be

14

"particularly appropriate where the former turns on difficult or novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the challenged conduct was not objectively unreasonable in light of existing law." *Id.* (internal quotation marks omitted) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

### a.   *Terry* Stop

As described below, the Defendant police officers' initial stop of Mr. Perry's vehicle was justified by a reasonable suspicion that he was violating Conn Gen. Stat. § 14-18, thus it did not violate the Fourth Amendment.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may briefly detail an individual for questioning if the officer had "a reasonable suspicion that the individual is, has been, or is about to be engaged in criminal activity." *United States v. Padilla*, 548 F.3d 179, 186 (2d Cir. 2008). In determining whether the officer had a reasonable suspicion, the court "look[s] to the totality of the circumstances to see whether the officer had a 'particularized and objective basis' to suspect criminal activity." *Id.* at 187 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "Reasonable suspicion requires considerably less of a showing than probable cause." *United States v. McCargo*, 464 F.3d 192, 197 (2d Cir. 2006). "Still, the Fourth Amendment requires some minimal level of objective justification for making the stop. Consequently, an officer's inchoate suspicion or mere hunch is insufficient to justify a *Terry*-type detention." *United States v. Glover*, 957 F.2d 1004, 1009-10 (2d Cir. 1992) (internal quotation marks omitted). "Reasonable suspicion is an objective standard; hence, the subjective intentions or motives of the officer making the stop are irrelevant." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000).

The Supreme Court has determined that police officers may make a valid *Terry* stop of a vehicle if "the police officer reasonably suspects that the [driver] is committing or has committed a criminal offense." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009). The Second Circuit has also held "unambiguously that the reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009).

Reasonable suspicion of a traffic violation is also an objective standard, so allegations that police officers had other subjective motivations are generally irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved. . . . Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("The Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent. . . . In other words, an officer's use of a traffic violation as a pretext . . . is of no constitutional significance."). "Therefore, a police officer who observes a traffic violation may stop a car without regard to what a 'reasonable officer' would do under the circumstances and without regard to the officer's own subjective intent." *Dhinsa*, 171 F.3d at 724-25. Furthermore, "[w]hen an officer observes a traffic offense – however minor – he has probable cause to stop the driver of the vehicle." *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994).

Under Connecticut law, Conn Gen. Stat. § 14-18(c), "[o]fficial number plates when displayed upon motor vehicles shall be entirely unobscured and the numerals and letters thereon shall be plainly legible at all times." Conn. Gen. Stat. § 14-18(c). Connecticut law further

provides that "[v]olation of any provision of subsection (a), (c), (d), (e) or (f) of [Conn. Gen. Stat. § 14-18] shall be an infraction."  Conn. Gen. Stat. § 14-18(g).

Mr. Perry's own deposition testimony admits that he knew his license plate was not legible and not clear.  *See* Perry Dep. 101:10-21, ECF No. 61-3.  Because it is, therefore, undisputed that Mr. Perry's license plate was not "plainly legible," Conn. Gen. Stat. § 14-18(c), no reasonable jury could conclude that the Defendants did not have "reasonable suspicion of a traffic violation," that allowed Defendants to stop Mr. Perry's vehicle without violating the Fourth Amendment.  *Stewart*, 551 F.3d at 193.  The Court therefore finds that Defendants are entitled to summary judgment on Mr. Perry's Fourth Amendment claims based on Defendants' initial stop of Mr. Perry's vehicle because there is no dispute of material fact that Defendants observed Mr. Perry's violation of Conn Gen. Stat. § 14-18, and could stop his vehicle without violating his Fourth Amendment rights.  *See Scopo*, 19 F.3d at 782.

Furthermore, Defendants have also met their burden to show that they are entitled to summary judgment on qualified immunity grounds because they did not "violate[] a statutory or constitutional right" with the *Terry* stop.  *Coollick*, 699 F.3d at 219.  Thus, the Court finds that Defendants would also be entitled to summary judgment on this claim on qualified immunity grounds.

### b.      False Arrest Claim

As described above, it is undisputed that Mr. Perry was in violation of Conn Gen. Stat. § 14-18 because he himself admits that his license plate was not legible at the time of the incident with the Defendants.  Defendants therefore had probable cause to both seize or arrest[3]  Mr. Perry

---

[3] The parties do not dispute that, during Mr. Perry's encounter with the Defendants, Officer Kozuch's actions resulted in a seizure of Mr. Perry's person under the Fourth Amendment.  *See Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he

as well as to conduct a search of Mr. Perry incident to that seizure or arrest without violating the Fourth Amendment.

The Supreme Court has held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that custodial arrest of a woman who admitted to a state law traffic violation because "neither she nor her children were wearing seatbelts" was permitted under the Fourth Amendment); *see also United States v. Bernacet*, 724 F.3d 269, 277 (2d Cir. 2013) (noting that *Atwater* allows police officers to arrest individuals for even "minor misdemeanors and traffic offenses" without violating the Fourth Amendment).

So long as there was probable cause supporting a custodial arrest under the Fourth Amendment, police officers may also conduct a search incident to the arrest regardless of the nature of the violation for which the officers had probable cause. *See Gustafson v. Florida*, 414 U.S. 260, 266 (1973) ("We hold, therefore, that upon arresting petitioner for the offense of driving his automobile without possession of a valid operator's license, and taking him into custody, [the officer] was entitled to make a full search of petitioner's person incident to that lawful arrest."); *Evans v. Solomon*, 681 F. Supp. 2d 233, 248 (E.D.N.Y. 2010) ("An arrest pursuant even to a simple traffic violation permits a search incident to arrest.").

---

was not at liberty to ignore the police presence and go about his business.'"); *United States v. Wiggan*, No. 3:09-CR-51 (SRU), 2010 WL 2698277, at *5 (D. Conn. July 8, 2010), *aff'd*, 530 F. App'x 51 (2d Cir. 2013) ("[A] [Fourth Amendment] seizure occurs only when a reasonable person, standing in the same position as the allegedly seized individual, would not feel free to leave or to refuse to cooperate with the police officer."). Mr. Perry's Complaint claims that Defendants "detained, seized, arrested, and caused [him] to be prosecuted." Compl. ¶ 26. Regardless of whether Mr. Perry's encounter with the Defendants is described as a custodial arrest or a seizure, the facts in this case do not, as a matter of law, support Mr. Perry's false arrest claim.

For the purposes of Fourth Amendment analysis, it is also irrelevant that the ticket that Officer Kozuch issued Mr. Perry did not specifically cite the violation of having an illegible license plate. *See* Perry Dep. 152:16-19; Ticket, Def.'s Rule 56 Statement Ex. C. (indicating that ticket was issued for failure to display a front license plate and use a turn signal). So long as the Defendants had probable cause for any charge that Mr. Perry violated the law, the arrest does not violate the Fourth Amendment. *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[W]e conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

The Court therefore finds that, because there is no genuine dispute of material fact that Mr. Perry's license plate was illegible at the time of his encounter with Defendants, the Defendants had probable cause to both arrest and search him for violating Conn. Gen. Stat. § 14-18. To the extent that Mr. Perry's Fourth Amendment claims are based on facts showing that Officer Kozuch seized him by asking him to get out of the car and grabbing his arm and to the extent that Officer Kozuch conducted a pat-down of Mr. Perry, Defendants' actions constituted a legitimate arrest and search incident to arrest allowed under the Fourteenth Amendment. *See Atwater*, 532 U.S. at 354; *Gustafson v. Florida*, 414 U.S. at 266. The Court therefore finds that Defendants are entitled to summary judgment on this claim because no reasonable jury could conclude that the Defendants violated the Fourth Amendment by arresting or searching Mr. Perry.

Additionally, Defendants have also met their burden of showing that they are entitled to qualified immunity because they did not "violate[] a statutory or constitutional right" with the

19

arrest and search.  *Coollick*, 699 F.3d at 219.  The Court finds that Defendants are also entitled to summary judgment on this claim on qualified immunity grounds.

### c.        Excessive Force Claim

Mr. Perry's Complaint also alleges that Defendants "assaulted plaintiff."  Compl. ¶ 27. The Court construes this allegation as raising a claim that the Defendants used excessive force on Mr. Perry in violation of the Fourth Amendment, specifically when Officer Kozuch gripped and pulled once on Mr. Perry's arm during the encounter and then pulled Mr. Perry's Bluetooth headset from his ear and threw it into Mr. Perry's vehicle, causing it to break.  Perry Dep. 151: 2-17; 154:15-22.

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks omitted) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  In determining whether the officers' use of force was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (internal quotation marks omitted).  "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case."  *Id.* (internal quotation marks omitted).  "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal quotation marks omitted).

### i.      Qualified Immunity

Because the Fourth Amendment test for reasonableness of an officer's use of force is "not capable of precise definition or mechanical application," *Graham*, 490 U.S. at 396, "[i]t would be an uncomfortable exercise to determine" whether officers violated a plaintiff's Fourth Amendment right to be free from excessive force because such a determination "depends on a kaleidoscope of facts." *Hodge v. City of Long Beach*, 425 F. App'x 33, 34-35 (2d Cir. 2011) (summary order).  In these circumstances, a court may consider whether Defendants are entitled to summary judgment on qualified immunity grounds under the second prong of the qualified immunity analysis, under which it is appropriate to grant summary judgment to Defendants if "no rational jury could conclude . . . that the right [at issue] was clearly established at the time of the challenged conduct." *Coollick*, 699 F.3d at 219; *see also Zalaski*, 723 F.3d at 388-89.

Although "[t]he right of an individual not to be subjected to excessive force has long been clearly established," *Calamia v. City of N.Y.*, 879 F.2d 1025, 1036 (2d Cir. 1989), the Second Circuit has nonetheless found that "the qualified immunity defense is generally available against excessive force claims." *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995).  "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (internal quotation marks omitted).  If "officers of reasonable competence could disagree" regarding whether a defendant officer's actions were legal or not "in its particular factual context, the officer is entitled to qualified immunity." *Id.* (internal quotation marks omitted).  Only if it "is obvious that no reasonably competent officer would have taken such action," will the officer not be immune. *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341

(1985)).  Thus, "qualified immunity protects all but the plainly incompetent or those who

knowingly violate the law." *Id.* (citing *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015)).

The Second Circuit has found that defendant police officers were "entitled to summary

judgment on qualified immunity grounds" regarding a Fourth Amendment excessive force claim

where an officer pulled the plaintiff's hand off the ignition of her car and pulled her from the car

to arrest her, which resulted in plaintiff injuring her wrist and receiving some hospital treatment

for her wrist.  *Lennon*, 66 F.3d at 426 (discussing case where plaintiff was arrested and charged

for obstructing governmental administration when plaintiff refused to get out of car so that

officers could return her car to its proper owner).  The Second Circuit has also affirmed a district

court's finding that defendant officers' use of force was objectively reasonable under the Fourth

Amendment where defendants used a taser in "'drive stun' mode, which typically causes

temporary, if significant pain, and no permanent injury" to arrest a plaintiff and remove her from

the scene where she had chained herself to a barrel drum as part of a protest with a group that

had called other group members to the scene; officers used the tasers as a last resort; and officers

warned warned plaintiff that they would use the taser if she did not comply.  *Crowell v.

Kirkpatrick*, 400 F. App'x 592, 595 (2d Cir. 2010) (summary order).  There, the Second Circuit

also found that "[i]t certainly was not clearly established that the use of force here violated

Plaintiffs' constitutional rights."  *Id.*

It is undisputed that Officer Kozuch's only physical contact with Mr. Perry was to firmly

grip Mr. Perry's left wrist with both hands and pull on Mr. Perry's wrist once.  Perry Dep 134:4-

18.  It is also undisputed that Mr. Perry sustained no physical injury as a result of his encounter

with Officer Kozuch, though he did receive some psychiatric treatment in relation to the events.

Perry Second Dep. 6:1-25, ECF No.61-4.  It is also undisputed that, before Officer Kozuch asked

Mr. Perry to get out of the car and held onto Mr. Perry's arm, Mr. Perry had gotten upset and

yelled at Officer Kozuch.  *See* Perry Dep. 128-18-129:5 (describing how Mr. Perry yelled several

statements at Officer Kozuch).  Once Officer Kozuch had grabbed Mr. Perry's arm, it is

undisputed that Mr. Perry continued to yell at Officer Kozuch.  *Id.* 135:14-21.

  The amount of physical force that Officer Kozuch used on Mr. Perry during the Fourth

Amendment seizure of his person, by grabbing Mr. Perry's left wrist with both hands and pulling

on it once without causing any physical injury, is a significantly lesser degree of physical contact

or force than was at issue during the arrests in *Lennon* or *Crowell*.  *Lennon* involved an officer

yanking a plaintiff forcibly from her car by putting his arm around her neck, shoulder, right arm,

and right hand, which resulted in physical injury to plaintiff's wrist and hospital treatment.  *See*

*Lennon*, 66 F.3d at 426.  In *Crowell*, defendant officers used a taser at a setting that caused

"temporary, if significant pain" to remove and arrest a noncompliant plaintiff.  *Crowell*, 400 F.

App'x at 595.  While none of these cases "squarely governs the case here" because excessive

force claims are an area of law "in which the result depends very much on the facts of each

case," these cases suggest that Defendants' actions "fell in the hazy border between excessive

and acceptable force," and do not "clearly establish" that Defendants' actions violated Mr.

Perry's Fourth Amendment rights.  *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (internal

quotation marks omitted).  The Court therefore finds that, with regards to Mr. Perry's excessive

force claims under the Fourth Amendment, Defendants are entitled to summary judgment on

qualified immunity grounds because Defendants did not violate Mr. Perry's clearly established

rights by using the amount of force they utilized in this case.

### d.        Malicious Prosecution Claim[4]

Mr. Perry's Complaint also alleges that Defendants "caused [him] to be prosecuted," which the Court construes as a malicious prosecution claim.  Compl. ¶ 26.  Officer Kozuch issued Mr. Perry a ticket for Mr. Perry's failure to display a front license plate and failure to use a turn signal.  Perry Dep. 150:1-2, ECF No. 61-3; Ticket, Def.'s Rule 56 Statement Ex. C.

"Claims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for . . . malicious prosecution under state law."  *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant*, 101 F.3d at 852; *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984)).  Under Connecticut law, in order to prevail on claims of either false arrest or malicious prosecution, a plaintiff must first establish that the officers lacked probable cause as to the underlying criminal charges.  *See Shattuck*, 233 F. Supp. 2d at 306 ("Under Connecticut state law, to establish malicious prosecution, the plaintiff must demonstrate that the 'initiation or procurement of the initiation of criminal prosecution with malice for a purpose other than bringing an offender to justice; that the defendant acted without probable cause, and the criminal proceedings terminated in favor of the plaintiff.'" (quoting *Clark*, 2002 WL 237854 at *3)); *see also Jovanovic*, 486 Fed.Appx. at 152 ("An element of any malicious prosecution claim is the absence of probable cause").

As described above, it is undisputed that Defendants observed Mr. Perry's violation of Conn. Gen. Stat. § 14-18, because Mr. Perry's license plate was illegible at the time of his encounter with Defendants.  Thus, just as there was probable cause to arrest Mr. Perry, *see*

---

[4] Neither party discusses Mr. Perry's possible malicious prosecution claim in their summary judgment briefs.  For the sake of completeness and because the Complaint can be construed as raising a claim for malicious prosecution, the Court also addresses Mr .Perry's possible malicious prosecution claim in this section.

*Atwater*, 532 U.S. at 354, there was probable cause for any "prosecution" of Mr. Perry for the violation.  Because there was probable cause, Mr. Perry's malicious prosecution claim fails as a matter of law, and the Court grants summary judgment in favor of Defendants on this claim.

### B.   Connecticut Law Claims

Mr. Perry also brings various claims under the Constitution of the State of Connecticut and the laws of Connecticut.  Compl. ¶ 3.  His Complaint does not clearly specify any provisions of the Connecticut Constitution nor any specific causes of action under the laws of Connecticut. *Id.*   As explained above, the Court grants summary judgment in favor of Defendants on all of Mr. Perry's federal claims.  The Court declines to exercise supplemental jurisdiction over his remaining state law claims.  *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."); *Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir.2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

## IV.   CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment, ECF No. 61, is **GRANTED** as to all of Mr. Perry's federal claims.  The Court also declines to exercise supplemental jurisdiction as to Mr. Perry's remaining state law claims and remands this case back to the Superior Court of Connecticut.

The Clerk of the Court is directed to enter judgment for the Defendants accordingly and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 16th day of March, 2017.

   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge